**SEALED**

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Texas

**FILED**
January 19, 2023
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| United States of America<br>v.<br>Dorian Ricardo Oviedo Almanza<br><br>*Defendant(s)* | Case No.<br>3:23-MJ-057-BT |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **January 2023** in the county of **Dallas** in the **Northern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 | Conspiracy to Distribute and Possess with the Intent to Distribute Controlled Substances. |

This criminal complaint is based on these facts:

See attached Affidavit of DEA Special Agent Adam West.

☑ Continued on the attached sheet.

*Complainant's signature*

Adam West, DEA SA
*Printed name and title*

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1.

Date: January 19, 2023

*Judge's signature*

City and state: Dallas, Texas          REBECCA RUTHERFORD, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Adam West, after being duly sworn, depose and say as follows:

## I. Introduction

1. My name is Adam West, and I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct criminal investigations and to make arrests for federal felony offenses. I am a Special Agent with the Drug Enforcement Administration of the United States Department of Justice and have been so employed since September 2019. I am currently assigned to the Dallas Field Division Office. In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, et seq.). I have conducted complex investigations and participated in numerous arrests and search warrants. I have written affidavits in support of court authorized federal warrants and orders for search warrants, GPS tracking of telephones and vehicles and pen registers and trap and trace devices, and T-III wire intercepts. I have conducted interviews of drug traffickers, which has provided me with a greater understanding of the methods by which drug trafficking organizations operate. I am familiar with common methods of investigating drug trafficking and manufacturing organizations, and have become familiar with the methods of operation, including, but not limited to their methods of importing, exporting, storing, concealing, and packaging drugs and drug proceeds; their methods of transferring and distributing drugs; their use of cellular telephones and telephone; their use of numerical codes,

**Affidavit - 1**

code words, and counter surveillance; and other methods of avoiding detection by law enforcement. Through my training and experience, I can identify illegal drugs by sight, odor, and texture.

## II. Background

2. I have probable cause to believe that **Dorian Ricardo Oviedo Almanza** violated 21 U.S.C. §§ 846, that is, conspiracy to distribute and possess with the intent to distribute fentanyl or a substance and mixture containing a detectable amount of fentanyl, a Schedule II controlled substance.

3. My knowledge of the facts alleged in this affidavit arise from my personal participation and observations in this investigation, my interviews of informants, and my review of reports prepared by investigators of the DEA Dallas Field Division and other participating law enforcement officers. Since this affidavit is limited to establishing probable cause, I have not included every fact known to me and other investigators. Rather, I am only submitting the facts necessary to establish probable cause that co-conspirators discussed herein conspired to distribute and possess with the intent to distribute methamphetamine.

## III. Probable Cause

4. Since the beginning of January 2023, a DEA Cooperating Source (hereinafter CS1) has been in contact with an unidentified Spanish-speaking male, who is a source of supply/broker (hereinafter SOS) within a Mexico-based drug trafficking organization (DTO). CS1 advised this SOS is affiliated with the Sinaloa

Cartel and their cartel has operations in California and Texas, specifically the Dallas/Fort Worth area.

5. CS1 has been providing credible and reliable information to DEA Agents since approximately October 2022. CS1 has only been involved in one controlled purchase; however; he/she has provided information to the extent possible by independent investigation of Agents, including but not limited to, consensually monitored phone calls between the SOS arranging the purchase of fentanyl pills, conducting surveillance, and obtaining intelligence that has been verified through several law enforcement databases. CS1 has a prior criminal history that includes an arrest and conviction for driving while intoxicated. CS1 is cooperating with Agents in lieu of being charged for a felony drug offense.

6. CS1 advised the SOS informed him/her that he could supply CS1 with fentanyl pills and that he would coordinate the transaction between CS1 and a local Dallas-area distributor, who is working in concert with him. The SOS advised CS1 he could arrange for CS1 to receive 1,000 fentanyl pills in exchange for $1,500.00. The SOS further advised CS1 that he would be in direct communication with him/her and the local distributor throughout the duration of the transaction.

7. On or about January 9, 2023, CS1 advised Agents the SOS had provided him/her an address on Lake June Road in Dallas, Texas to meet the local distributor in order to obtain the fentanyl pills. In anticipation of this transaction, Agents established surveillance at the agreed-upon meet location. Agents then met up

Affidavit - 3

with CS1 at a secure and neutral location. CS1 was searched for drugs and/or contraband, with negative findings. CS1 then placed a monitored phone call to the SOS to confirm the deal, with the SOS advising the local distributor would be arriving at the agreed-upon meet location within an hour.

8.  As CS1 was preparing to meet the local distributor, the SOS advised CS1 not to give the money to the local distributor delivering the fentanyl pills. The SOS advised CS1 that he would later direct him/her to deliver the money to another subject after the transaction was complete. CS1 was then equipped with $1,500 in Official Advanced Funds (OAF) and a recording device to conduct the transaction. A short time later, CS1 departed the area and traveled to the address provided by the SOS, remaining under continuous surveillance by Agents. After some time, Agents observed CS1 arrive and park his/her vehicle in the open parking lot of the agreed upon meet location. Shortly thereafter, Agents observed a white pickup truck arrived in the parking lot and parked next to CS1's vehicle. At this time, CS1 approached the white truck and contacted the local distributor, who provided CS1 a plastic bag containing suspected fentanyl pills. After a brief encounter, the white truck departed the area while Agents met back up with CS1. CS1 then provided Agents with the OAF and with the suspected fentanyl pills that had been provided to him/her from the local distributor. Agents again searched CS1 and their vehicle for drugs and/or contraband, with negative findings. Agents later conducted a presumptive field test and the pills tested positive for the presence of fentanyl. Agents also weighed the

**Affidavit - 4**

fentanyl pills at the DEA Dallas Division Office and the pills weighed approximately 288.9 gross grams.

9. On or about January 12, 2023, CS1 advised the SOS had provided him/her with a phone number for the subject who he/she is supposed to pay for the fentanyl pills that had been previously provided to him/her. CS1 advised the subject who he/she is supposed to pay is "Dorian" and that his phone number is 337-399-3970. CS1 advised he/she contacted "Dorian" and it was arranged for him/her to meet "Dorian" the following day in Grapevine, Texas.

10. In checking law enforcement databases, Agents learned **Dorian Ricardo Oviedo Almanza (hereinafter Oviedo Almanza)** is associated with the phone number for "Dorian" that had been provided by the SOS. Agents also learned that **Oviedo Almanza** has a white Ford Flex bearing Texas registration: RJL8594 registered to his name in Grapevine, Texas.

11. At a later date, Agents met with CS1 at a secure and neutral location. Agents searched CS1 and their vehicle for drugs and/or contraband, with negative findings. Agents then had CS1 contact "Dorian" and it was confirmed he/she was still meeting him to give him the money for the fentanyl pills and that he would be arriving in a white Ford Flex. Agents then provided CS1 with the OAF and a recording device to consummate the transaction. CS1 then departed the location where he/she remained under continuous surveillance throughout this operation.

**Affidavit - 5**

12. CS1 arrived in the area of the agreed-upon meet location and proceeded to call "Dorian" to let him know that he/she had arrived, with "Dorian" advising he was able to pull up. At this time, Agents observed the aforementioned Ford Flex arrive and park next to CS1's vehicle. Agents observed CS1 exit his/her vehicle and approach the passenger side of the white Ford Flex. After a brief conversation, the white Ford Flex departed the area. Agents maintained continuous surveillance of the white Ford Flex until it ultimately parked outside an apartment complex located at 834 E. Walnut Street, Grapevine, Texas. Agents observed a Hispanic male, who after further investigation was positively identified as **Oviedo Almanza** exit the vehicle and walk towards building 834. Agents further observed **Oviedo Almanza** walk up the stairs in the breezeway and go into an unknown apartment. Shortly thereafter, Agents terminated surveillance on this date.

13. On or about January 18, 2023, DEA HIDTA Group 3 Agents were contacted by Agents with a DEA Dallas Enforcement Group (DEA Enforcement Group One) in regards to **Oviedo Almanza's** phone number. Enforcement Group One Agents advised they were in contact with another Mexico-based broker, who passed **Oviedo Almanza's** phone number in order to obtain a large quantity of fentanyl pills. DEA HIDTA Group 3Agents advised Enforcement Group One that **Oviedo Almanza** was already being investigated and that surveillance was going to be established at his residence at 834 E. Walnut Street, Grapevine, Texas. Agents from Enforcement Group One stated they would contact their Mexico-based broker

once DEA HIDTA Group 3 Agents were set up on surveillance, in order to see if **Oviedo Almanza** would depart his residence carrying a large container or bag, which could possibly contain and/or conceal a large amount of fentanyl pills.

14. Agents established surveillance on **Oviedo Almanza's** apartment building and Agents observed **Oviedo Almanza's** vehicle parked outside his apartment building. Agents notified Enforcement Group One that surveillance had been established and in turn they placed a call to the Mexico-based broker to arrange the pick up of a large quantity of fentanyl pills in the Mesquite, Texas area. After some time, Agents observed two individuals later identified as **Oviedo Almanza** and the passenger exit the apartment building and Agents observed **Oviedo Almanza** carrying a large "Nike" bag. Based on the timing of Enforcement Group One contacting their Mexico-based broker and the time of **Oviedo Almanza** exiting the apartment complex carrying a bag, I believe they were preparing to deliver a large shipment of fentanyl pills. Agents observed both **Oviedo Almanza** and the passenger enter **Oviedo Almanza's** vehicle and depart the apartment building. Based on these circumstances, Agents had previously contacted a marked Grapevine Police Department unit to assist if a traffic violation was observed. Officers/Agents had observed a traffic infraction and a short time later, Grapevine PD units initiated a traffic stop on **Oviedo Almanza's** vehicle. While speaking with both subjects, Grapevine PD officers detected a strong odor of burnt marijuana emanating from inside the vehicle. A subsequent probable cause search revealed a large quantity of

**Affidavit - 7**

suspected fentanyl pills, inside a large plastic Tupperware style container, that was concealed underneath a large black trash bag in the passenger compartment of the vehicle.

15. Agents spoke with **Oviedo Almanza**, who was the target of this investigation. Agents had **Oviedo Almanza** read his Miranda Warnings via a DEA 13 card (Spanish version), with him advising he understood his rights and that he was willing to speak with Agents. **Oviedo Almanza** was asked how long he had been living at his address 834 E. Walnut Street, Apt. 253, Grapevine, Texas. **Oviedo Almanza** advised he has been residing at this apartment for approximately two months. **Oviedo Almanza** was asked about the pills in his vehicle and he readily admitted the pills were illegal drugs. Agents asked **Oviedo Almanza** if he had any other drugs and/or contraband inside his residence. **Oviedo Almanza** advised there were more illegal pills and possibly a firearm inside his residence. **Oviedo Almanza** further stated that all the drugs and the gun belonged to him and that his two roommates had nothing to do with the illegal activity that he was involved in. Agents then asked **Oviedo Almanza** for consent to search his residence, which **Oviedo Almanza** granted Agents consent and he signed a DEA 88 form – consent to search form (Spanish version), allowing Agents to search his residence. Agents left the police department while another Agent remained with **Oviedo Almanza** in case he revoked his consent to search.

Affidavit - 8

16. Agents were able to obtain a key for his apartment. Agents unlocked the door, knocked and announced our presence, with no response. Agents proceeded to clear the residence and no one else was located inside the apartment. After taking photographs of the residence, Agents conducted a systematic search of the residence. In searching the residence, Agents located additional fentanyl pills and one firearm in one of the bedrooms, exactly in the location **Oviedo Almanza** said the contraband was located.

17. Agents later spoke with the passenger, who advised he was only going with **Oviedo Almanza** to run an errand and that the illegal drugs did not belong to him. He further stated he and **Oviedo Almanza** were going to grab dinner once he dropped off the illegal drugs that were in his vehicle. He readily admitted he knew there were drugs inside **Oviedo Almanza's** vehicle, but reiterated that the drugs did not belong to him.

18. Agents then transported the suspected Fentanyl to the DEA Dallas Field Division. Agents proceeded to field test the suspected pills and they tested positive for the presence of fentanyl. Agents then later weighed the pills stemming from the traffic stop, which weighed approximately 5,596.2 gross grams. Agents then weighed the pills from the apartment and they weighed approximately 6,820.8 gross grams.

### IV. Conclusion

Based upon the information contained in this affidavit, I believe that there is probable cause to believe that on January 18, 2023 that **Dorian Ricardo Oviedo**

**Affidavit - 9**

**Almanza** violated 21 U.S.C. §§ 841 (a)(1) and (b)(1)(C), that is, possession with intent to distribute a substance and mixture containing a detectable amount of fentanyl, a Schedule II controlled substance.

_____
Adam West
Special Agent
Drug Enforcement Administration

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P 4.1 on __19th__ day of January 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF TEXAS

Affidavit - 10